## B. A. SHEPHERD et al. v. W. W. WOODFOLK et al.

1. FRAUDULENT CONVEYANCE. *Redemption.* A lot of land of the father was sold under execution founded upon a valid judgment and was redeemed by the son, who was aiding his father in the purpose of hindering, delaying and defrauding his creditors as to all his property. *Held,* that said redemption was fraudulent and void as to the creditors of his father, and the son will not be entitled to the redemption money paid by him.

2. LIEN. *Judgment creditors. Priority.* A judgment creditor who has an execution levied upon land and files his bill to remove an obstruction, as a fraudulent conveyance, has a prior lien over a creditor who afterwards obtains judgment, has execution issued and levied and land sold within twelve months, and before the hearing of the bill filed by by the first judgment creditor. A creditor who has acquired a specific lien on property, and an obstruction is interposed which prevents a sale at a fair valuation, has a right to come into equity to remove the obstruction, that he may obtain a full price for the property. Such action is not an abandonment of his right, equity or lien, but is in aid and furtherance thereof.

3. SAME. *Judgment.* A creditor who files a bill to enjoin a debtor from prosecuting an appeal in the Supreme Court, and assigning errors in the judgment, and has an affirmance of his judgment as a result of affirming the decree in the chancery court, looses the lien of his circuit court judgment. The affirmance of the decree of the chancery court does not relate back to the date of the circuit court judgment and perpetuate the lien thereof.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

JOHN C. GAUT & SON, RICE & GOLLADAY and J. D. WADE for Lewis' adm'r et al.

38—VOL. 10.

ED. BAXTER for Sedon *et al.*

DEMOSS & MALONE for Perkins & Co.'s claim.

DAVID CAMPBELL & SON and SMITH & ALLISON for defendant Woodfolk.

GARNER, Sp. J., delivered the opinion of the court.

This cause has been very fully presented in argument, by learned counsel. We have examined the voluminous record of several thousand pages.

It involves various transactions—and conveyances of property—and legal proceedings in the circuit, chancery, supreme and federal courts—and the rights and equities of sundry judgment creditors of the late Gen. W. W. Woodfolk, to the property in litigation—and the rights and equities of said creditors, as between themselves, to priority of satisfaction out of the property aforesaid.

At the breaking out of the late war, Gen. Woodfolk had an estate of some $500,000 or $600,000, and was indebted some $200,000 or $300,000.

As the result of the war, he lost his valuable slave property, a large amount of cotton, a large portion of his valuable stock of various kinds, and other personal property; so that, at the close of the war, and when the courts were again open, he was indebted to insolvency—with the prospect before him, of suits, by his numerous creditors, to enforce the collection of their demands.

In this state of things, he went to work to place

his property beyond the reach of his creditors, before they could fasten liens upon it.    They commenced suing him early in 1866, upon claims to a large amount.

On the 1st of January, 1866, he left his home at Nashville, and went to Memphis, where he executed his note to his son, William Woodfolk, for $39,425, and executed then, or soon thereafter, a power of attorney to one Chapman, authorizing him to confess judgment on said note—which was done in Chicot county, Ark., on the 16th of April, 1866.  *Fi. fa.* thereon was issued April 19, 1866, and was levied upon a valuable tract of some 2,150 or 2,613 acres of land in said county, which was sold by the sheriff and bought by William Woodfolk for some $4,500, who credited his judgment accordingly, and took the sheriff's deed therefor.

In June, 1866, Gen. Woodfolk caused his banker at New York, Thomas Eakin, to purchase for him $16,000 of U. S. bonds, and in July, 1866, $6,000 more; and, after selling these bonds at a profit, and paying Woodfolk's drafts, amounting to $3,597, Mr. Eakin, by Gen. Woodfolk's direction, invested the net proceeds in the purchase of $20,000 U. S. bonds on the 12th of January, 1867, and sent them by express to the General, and paid him the remaining sum of $332.26 in cash.

Early in 1867, W. W. Woodfolk sold and conveyed, for cash, large tracts of land owned by him in several different counties of West Tennessee.

On the 31st of January, 1867, Gen. Woodfolk left

his home at Nashville, and went to Gallatin, and executed and acknowledged a deed, conveying to J. T. Quarles, as trustee, a tract of over 3,000 acres of land in Jackson county, to secure the Arkansas judgment confessed in favor of William Woodfolk. Said deed was the next day received for registration, and at once put to record in Jackson county.

On the 18th of February, 1867, W. W. Woodfolk conveyed to John Hughes, by deed, for the expressed consideration of $15,000 in hand paid, Woodfolk's home place at Nashville, of some five acres and upwards, and the adjoining lot of over two acres, and some 389 shares of stock in the Union Bank, of the nominal value of near $40,000. This deed was at once put to record.

On the 21st and 28th of February, 1867, M. H. Howard, who was a creditor of W. W. Woodfolk, by note for borrowed money, for $7,000, and interest, filed his original and amended bills in the chancery court of Davidson county, attacking the foregoing conveyances for fraud.

On the 10th of June, 1867, Hughes reconveyed the Nashville property and bank stock to W. W. Woodfolk; and, in his deposition, Hughes proves that he did not pay a dime for said property, but was to sell it, and get ten per cent for his services.

On the 23d of January, 1868, W. W. Woodfolk again left his home at Nashville, and went to Columbia, and there confessed judgment in favor of his son, William Woodfolk, for $37,150—balance of the Arkansas judgment before spoken of.

One Ivans recovered judgment against W. W. Wood-
folk May 8, 1866, in the U. S. Circuit Court at Nash-
ville, for $4,496.55, and after being delayed by Gen.
Woodfolk's appeal to the Supreme Court of the United
States, which was dismissed, Ivans took out an exe-
cution and had Gen. Woodfolk's home place sold
January 25, 1868, and bought it for $5,174.74, and
credited his judgment accordingly, and took the mar-
shal's deed for the property, March 4, 1868.

On the 22d of May, 1869, William Woodfolk un-
dertook to redeem his father's home place from Ivans,
by paying him $5,583.47, and William Woodfolk ad-
vanced $16,000 of his Arkansas judgment on said
property, and took Ivans' deed.

Thus, a judgment creditor of W. W. Woodfolk,
would have had to pay William Woodfolk near $22,-
000 and interest, in order to redeem said property
from him.

The proof shows that William Woodfolk was a
young man of moderate means—while his father was
possessed of ample monied means.

It is evident, from all the facts and circumstances
disclosed in this record, that W. W. Woodfolk's entire
transactions hereinbefore referred to, were had and done
for the purpose of placing his property and effects
beyond the reach of his creditors; and that his son
William was, at all times, active in aiding his father
to carry out said design. It would seem most prob-
able, that the money paid to Ivans by William Wood-
folk, was the money of his father.

In this connection it is proper to state, that per-

mitting the 2¾ acre lot adjoining Gen. Woodfolk's home place at Nashville, to be sold for taxes, and bought at said sales by William Woodfolk, and his taking the deeds of the tax collectors therefor were, in our opinion, a part of the devices of father and son, to throw every obstacle possible in the way of Gen. Woodfolk's creditors in their efforts to collect their debts.

Even if William Woodfolk used his own money in his attempted redemption from Ivans, and his tax sale purchases—still, as his purpose, in these transactions, was to help his father to hinder, delay and defraud his creditors, then, as to said creditors, said purchases and attempted redemption are fraudulent and void.

In *Alley* v. *Connell*, 3 Head, 582, the eminent jurist, Judge McKinney, in delivering the opinion of this court, announces the doctrine, that a conveyance fraudulent in fact is absolutely void, and is not permitted to stand as a security for any purpose of reimbursement or indemnity; and that, if a deed be void for fraud in fact, the creditor is entitled to avoid it without prepayment, to the fraudulent purchaser, of the purchase money.

The case of *Alley* v. *Connell* is cited approvingly in *Hickman* v. *Perrin*, 6 Cold., 142; *Turbeville* v. *Gibson*, 5 Heis., 586, and *Lockhard* v. *Brodie*, 1 Tenn. Chancery, 388, and its authority has never been called in question that we are aware of.

On this branch of the case we need only add, that, in our opinion, the execution of the note for $39,425. from W. W. Woodfolk to his son, William Woodfolk,

the confession of judgment thereon in Maury county, Tennessee, and the conveyance of the Jackson county land to J. T. Quarles, as trustee, for the benefit of William Woodfolk, and the deed to John Hughes of W. W. Woodfolk's Nashville property and bank stock, and the attempted redemption from Ivans, by William Woodfolk, of his father's home place, and the purchase at the tax sales of the 2¾ acres by William W··odfolk, and taking Ivans' and the tax collector's deeds for the Nashville property, are, as to W. W. Woodfolk's creditors, fraudulent and void, and will be so declared: and William Woodfolk is not entitled to be reimbursed out of said property such sums of money (if any) as he may have advanced of his own means, in these transactions.

As to William Woodfolk's plea of the statute of limitations in this cause, we hold, that there was no such adverse continuous possession as to form the bar of the statute in his behalf, or to vest him with title to the Nashville property aforesaid, or any portion thereof.

We now proceed to ascertain and declare the rights and equities of W. W. Woodfolk's creditors, in this cause, as between themselves.

On the 11th of June, 1868, B. A. Lewis, as administrator of W. W. Wilkins, recovered a judgment in the Davidson circuit court against W. W. Woodfolk for $66,890.88. On appeal, said judgment was affirmed by this court, January 18, 1873, for the sum of $84,731, debt and $170.01 costs. *Fi. fa.* issued thereon April 1873, and the same month was levied

on certain lands in Jackson county as the property of W. W. Woodfolk.

On the 28th of January, 1873, the New Orleans Canal & Banking Company recovered a judgment against W. W. Woodfolk in the Davidson circuit court for $11,257.32 and costs.

On the 11th of March, 1873, James A. Seddon recovered a judgment in said court against W. W. Woodfolk for $81,841.98, and costs.

On the same day and in the same court, Robert Ewing, administrator of J. M. Morson, recovered judgment against W. W. Woodfolk for $81,841.98 and costs.

*Fi. fas.* issued on said three last-mentioned judgments and were all levied in April, 1873, on the Jackson county lands aforesaid. Memorandums of all four of the foregoing judgments were registered in Jackson county in April, 1873.

On the 7th of August, 1873, Lewis, administrator of Wilkins, Ewing, administrator of Morson, James A. Seddon, and the New Orleans Canal & Banking Company filed their attachment and injunction bill in the chancery court at Nashville, attaching the property of of W. W. Woodfolk, and praying for the appointment of a receiver to take possession of said property pending the litigation, and for a sale thereof, free from the equity of redemption, after first removing all clouds from the title; and asking that their respective rights of priority by virtue of their judgment and execution liens be determined—expressly agreeing that said · liens and rights, as then existing, were to remain in full

force, and be in no way affected by the proceedings in that cause.

The bill was filed by learned and experienced counsel, eminent for their skill and attainments in equity jurisprudence.

The complainants had a right to file said bill. It was not an abandonment of their rights, equities, or liens; but was in aid and in furtherance thereof. Said bill sets forth the various fraudulent devices, transactions and conveyances on the part of W. W. Woodfolk and his son, William Woodfolk, which we have heretofore considered, and sought to obtain satisfaction of complainants' debts out of the property attached.

Equity has jurisdiction to aid an execution creditor in removing embarrassments in the way of a sale, so as to prevent a sacrifice of the property, and ascertain the precise interest to be sold: *Kerr* v. *Kerr*, 3 Lea, 228; *Parrish* v. *Saunders & Martin*, 3 Hum., 431; *Long* v. *Page*, 10 Hum., 541; *Haskins & Reynolds* v. *Everett*, 4 Sneed, 531.

Fraud constitutes the most ancient foundation of equity jurisdiction. A court of equity sifts the conscience of the parties, and removes the cloud from the title, and furnishes more adequate relief than can be had at law: Bump. on Fraudulent Conveyances, 518, 519.

Where a creditor has acquired a specific lien on the property, and an obstruction is interposed, which prevents a sale at a fair valuation, the creditor has a right to come into equity, to remove the obstruction, that

---

---

he may obtain a full price for the property. He must, therefore, proceed at law until he obtains such lien. In the case of land a judgment alone is commonly sufficient: Bump. on Fraudulent Conveyances, 523.

Practically, the main contest as to priority of satisfaction in this case, is between B. A. Lewis, administrator of W. W. Wilkins on the one hand, and S. M. Swenson and B. A. Shepherd on the other. Lewis obtained his judgment in the circuit court, as we have seen, June 11, 1868. Perkins & Co. obtained judgment against W. W. Woodfolk in the Davidson circuit court on the 21st of May, 1869, for $28,361.58, and costs; and M. J. Swayze for $8,984.47, and on appeal to this court, said judgments were affirmed May 10, 1875—the one in favor of Perkins & Co. for $38,524.26, and in favor of M. J. Swayze for $12,203.73. Said judgments since became the property of S. M. Swenson and B. A. Shepherd.

Thus it will be seen, that Lewis had the oldest judgment and lien. And when said judgment was affirmed by this court, his lien related back to June 11, 1868, when his judgment was rendered in the circuit court. This lien was kept alive and perpetuated by the issuance of *fi. fa.* and levy of same on the Jackson county lands, and registration of a memorandum of said judgment in said county in April, 1873, and by the filing of the bill of August 7, 1873, to enforce said lien, in which he attached the lands in Jackson and Davidson counties and the bank stock, subject to. Howard's prior liens thereon in the attachment bill of

February 21, 1867, and in his levy upon the bank stock and dividends as assignee of a judgment against W. W. Woodfolk, recovered by James Whitworth, administrator of one Bysor. Lewis and others prosecuted said chancery cause to a hearing January 17, 1879, and obtained a decree in their favor. Lewis. has been guilty of no *laches*, but has diligently prosecuted his most favored remedies, and still holds his original prior lien to that of Shepherd and Swenson.

In the said chancery cause, on the 3d of August, 1875, on their *ex parte* petition, Shepherd & Co. and Swenson asked the court for leave to take such steps as they may be advised for the enforcement of their aforesaid judgment against the property in the custody of the receiver in the cause, and the court, to quote the language of the decree, "gave them leave to proceed accordingly, notwithstanding the existence of the receivership and the possession of the property by the receiver, but the possession of the said receiver is not to be disturbed without further orders."

This order was made without notice to Lewis, or the other complainants in the cause. It does not assume to adjudicate anything touching their rights. It cannot affect or prejudice their rights, liens or equities. It was inconsiderately and improvidently made. And yet, Shepherd & Co. and Swenson rely upon it as a basis for their action in seeking to defeat the prior lien of Lewis, and of his co-complainants, if the lien of the latter was also prior to Shepherd & Co. and Swenson.

On the 26th of May, 1875, Shepherd & Co. and Swenson caused their supreme court judgment to be registered in Jackson county, and on the 28th of June, 1875, in Davidson county; and on the 31st of July, 1875, took out execution thereon, and had the same levied on W. W. Woodfolk's Nashville property, and bought the same at the sheriff's sale February 19, 1876, for $20, and advanced the sums of about $19,000 of their judgments on said property and took the sheriff's deed therefor.

On the 9th of October, 1875, Shepherd & Co. and Swenson caused *fi. fa.* to issue and be levied on three tracts of the Jackson county lands, which were sold by the sheriff March 14, 1876, to Shepherd & Co. and Swenson for $1,790, and they advanced their bids in the sum of $13,000, and credited their judgments accordingly, and took the sheriff's deed for said land; and file their bill on the 28th of April, 1876, claiming title to all of said property.

Said cause was heard January 15, 1883. The chancellor held, that the note of $39,425, executed January 1, 1866, by W. W. Woodfolk to his son William Woodfolk, and the conveyance to John Hughes by W. W. Woodfolk of the Davidson county lands and the bank stock, and the conveyance by W. W. Woodfolk to J. T. Quarles, trustee, of the Jackson county lands for the benefit of William Woodfolk, were, as to W. W. Woodfolk's creditors, fraudulent and void; and that Shepherd & Co. and Swenson acquired a prior lien to the Jackson county lands bought by them as aforesaid, over Lewis and his co-complainants; and a like prior

lien to the $2\frac{3}{4}$ acre lot adjacent to W. W. Woodfolk's home place, subject to William Woodfolk's reimbursement for taxes paid by him—his purchases at the tax sales being held void:—and that William Woodfolk, by his redemption from Ivans and his possession, acquired title to W. W. Woodfolk's home place of about $5\frac{3}{4}$ acres; and that, as to the bank stock, Shepherd & Co. and Swenson are not entitled to be subrogated to Howard's lien created by his bill and attachment against W. W. Woodfolk; that said stock was subject to levy under the Whitworth execution, and the lien created by such levy is superior to the claims of Shepherd & Co. and Swenson upon it; and that, after the satisfaction of the Whitworth execution, Lewis, Seddon, Ewing and the Canal and Banking Company are entitled to *pro rata* the balance.

The chancellor decreed, that Shepherd & Co. and Swenson pay one-third of the costs, except the Hillman costs; that William Woodfolk pay one-sixth of the costs, and the other defendants the residue. Howard, Lewis, adm'r, Ewing, adm'r, Seddon, J. T. Hillman, James T. Quarles and the New Orleans Canal and Banking Company are defendants in said cause.

Shepherd & Co. and Swenson appeal from so much of said decree as relates to the $5\frac{3}{4}$ acres of Davidson county land and the bank stock.

Lewis, adm'r of Wilkins, Ewing, adm'r of Morson, Seddon, and the New Orleans Canal and Banking Company appeal from so much of said decree as gives the lands in Jackson and Davidson counties to the complainants Shepherd & Co. and Swenson, and the $5\frac{3}{4}$

acres, called W. W. Woodfolk's home place, in David-
son county, to William Woodfolk.

And the defendant William Woodfolk appealed from
so much of said decree as relates to the 2¾ acres de-
creed in favor of the complainants.

In the progress of the cause, the death of W. W.
Woodfolk was suggested, and the cause revived against
his heirs.    They do not appeal.

In September, 1867, Whitworth, adm'r of Bysor,
recovered judgment against W. W. Woodfolk in the
Davidson circuit court for $5,426.19, which, on appeal
to this court, was affirmed at December term, 1868,
and *fi. fa.* awarded.

In October, 1867, for value received in full, Whit-
worth, having previously been paid by Allen, cashier,
$1,556 of his claim, assigned said circuit court judg-
ment to Howard—who, in 1869, after the affirmance
aforesaid, took out an execution and levied it on the
bank stock$^w$ and dividends, and Joseph W. Allen, the
cashier, was notified accordingly, and the stock adver-
tised for sale.    Whereon W. W. Woodfolk filed a bill
in chancery at Nashville against the Union Bank and
its directors, alleging that they had wrongfully con-
verted his stock, and that he had no stock in said
bank, and enjoined Howard from selling said stock.

Other parties, as alleged creditors of W. W. Wood-
folk, instituted proceedings to recover said stock and
its dividends.    In the meantime, the Union Bank and
Joseph W. Allen, trustee, cashier and receiver, filed a
bill of interpleader, August 13, 1869, to determine
who was entitled to the stock and dividends, and

paid the proceeds into court, for the benefit of those entitled.

On the hearing in the chancery court at Nashville, ·of the cause of Seddon, Lewis, Ewing, and the New Orleans Canal and Banking Company against W. W. Woodfolk *et al.*, it was decreed, by consent, that Howard, as assignee of the Whitworth judgment, had the prior lien and should be first paid out of the dividends arising from said bank stock, and the balance should be paid to the several complainants in that case *pro rata.* And, to this effect, is the chancellor's decree in the cause under consideration. And this portion of said decree is correct and will be affirmed.

Howard has been paid his judgment on his note ·of $7,000 and interest for borrowed money, and a portion of the large sum he advanced at the request of the parties in interest in paying taxes on the Jackson county lands out of the proceeds of the sales of a portion of said land, and, also, probably out of the ·dividends of the bank stock. There is, as we are informed by counsel in argument, a sufficiency remaining of said dividends to pay what may be due Howard on his Whitworth judgment, and for moneys paid ·of taxes by him. And out of said dividends he will be paid what may remain due him on account of these matters.

Lewis, as adm'r of Wilkins, after Howard is paid in full of his demands, has the prior lien as to the Jackson county lands, and rents thereof in the custody of the courts, and as to the 5¾ acres, known as· W. W. Woodfolk's home place, and the 2¾ acre lot adja-

cent there o at or near Nashville, in Davidson county; and said property will be sold by the clerk of this court, on a credit of one and two years, free from redemption, to satisfy Lewis' judgment, interest, and costs,—Howard's claims being first satisfied.

As Lewis' judgment and interest to this date, amounts to over $136,000, it is manifest that the property attached and impounded in this case will fall far short of satisfying the same. Hence any further question of priority as between the New Orleans Canal and Banking Company, Ewing, adm'r of Morson, and Seddon, and Shepherd & Co. and Swenson, is of no practical concern or importance.

As to these creditors of W. W. Woodfolk, Shepherd & Co. and Swenson have the oldest circuit court judgments—theirs having been rendered May 21, 1869, and the judgments of Ewing, Sedden, and the Canal Banking Company having been rendered at the January term, 1873.

Hence, Shepherd & Co. and Swenson would have priority of satisfaction over those other creditors of W. W. Woodfolk, were it not for the fact, that they lost the lien of their circuit court judgment by filing their bill, enjoining W. W. Woodfolk from prosecuting his appeal to this court, and from assigning errors in said judgment. So that, the affirmance of their judgment in this court was merely the result of affirming their decree in the chancery court, and did not relate back to the date of their circuit court judgments, and perpetuate the lien thereof.

After Howard, and Lewis, adm'r of Wilkins, have

been paid the sums due them in this cause, should
any surplus of the proceeds of the sales ordered, and
of the bank stock dividends, and rents of land, re-
main, Seddon, Ewing, adm'r, and the New Orleans
Canal and Banking Company will be paid, *pro rata,*
the sums due them. And should there be any of
said proceeds still remaining, the same will be paid to
Shepherd & Co. and Swenson, in satisfaction of the
sums due them.

The sales of certain tracts of the Jackson county
and Davidson county lands by the sheriffs, and the
purchase thereof by the complainants Shepherd & Co.
and Swenson, and taking the sheriffs deeds therefor,
and satisfaction of their judgments to the extent of
said purchase money and their advance bids will be
declared null and void, and cancelled and set aside,
and of no effect. And all the Jackson county lands,
not heretofore sold by decree for Howard's benefit, as
well as the Davidson county land or lots, will be sold
in the manner and for the purposes already stated.

The chancellor's decree will be reversed, and decree
rendered here in accordance with this opinion.

The bill of Shepherd & Co. and Swenson against
W. W. Woodfolk *et al.* will be dismissed, and they
will pay the costs of the same in the chancery court
and in this court.

All the other costs not heretofore paid, will be
paid out of the proceeds of the sales of lands and
lots herein ordered.